**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH NINA and JACKSON BLANCHARD on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>BA SPORTS NUTRITION, LLC,<br><br>Defendant. | Case No. ____________<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Joseph Nina and Jackson Blanchard (collectively, "Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against BA Sports Nutrition, LLC ("Defendant") and allege as follows:

**INTRODUCTION**

1. Plaintiffs bring this class action on behalf of consumers who purchased Defendant's BODYARMOR Flash IV ZERO Sugar Hydration Drink products (the "Products") during the applicable Class Period. Defendant formulates, labels, markets, advertises, distributes, and sells the Products throughout the United States, including in the State of New York and the District of Columbia. Defendant sells the Products through retail stores, online retailers, and other channels of commerce.

2. The Products include, but are not limited to, the following: BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime; BODYARMOR Flash IV Zero Sugar Hydration

Drink, Pineapple Passionfruit Caffeine; and BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch Caffeine.[1]

3. Defendant prominently markets the Products to consumers as "ZERO SUGAR" and through substantially similar representations that communicate to consumers that the Products contain no sugar (collectively, the "Zero Sugar Representations"). These representations are false and misleading. In reality, the Products contain a substantial quantity of allulose, and put simply, allulose is sugar. Allulose is the third- or fourth-listed ingredient in the Products' ingredient list, depending on flavor, indicating it is the third or fourth most prevalent of the Products' listed ingredients by weight. Upon information and belief, each serving of the Products contains 0.5 grams or more of allulose. Allulose is a monosaccharide and is included within the federal regulatory definition of "Total Sugars." *See* 21 C.F.R. § 101.9(c)(6)(ii) (defining "Total Sugars" as "the sum of all free mono- and disaccharides"). Federal regulation permits claims like the Zero Sugar Representations only if "[t]he food contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii) . . . per labeled serving." 21 C.F.R. § 101.60(c)(1).

4. The State of New York has adopted and incorporated federal food labeling regulations, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii). N.Y. Comp. Codes R. & Regs. tit. 1, § 259.1. The District of Columbia has likewise adopted and incorporated federal food labeling regulations, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii). D.C. Mun. Regs. tit. 25-A, § 1102. Under the governing federal and parallel New York and District of Columbia regulations, allulose is sugar. Those regulations define "sugars" as "the sum of all free mono- and disaccharides." 21 C.F.R. §

---

[1] *Flash I.V.*, BODYARMOR, https://www.bodyarmorsportsdrink.com/product-category/flash-i-v/ (last visited Nov. 5, 2026). Plaintiffs reserve the right to add to the list of Products if more become apparent during the litigation.

101.9(c)(6)(ii). Allulose is a monosaccharide, and nothing in the regulatory definition excludes it. Under the plain terms of the governing regulations, the allulose in the Products is sugar.

5. The Products thus contain a substance that constitutes "Total Sugars" under the governing federal and parallel New York and District of Columbia regulations in an amount that equals or exceeds the 0.5-gram-per-serving ceiling for a product represented as "zero sugar." 21 C.F.R. § 101.60(c)(1). The Products therefore do not conform with the Zero Sugar Representations. As set forth more fully below, the Zero Sugar Representations are false and misleading.

6. The deception alleged here is straightforward. Defendant tells consumers, in prominent and unqualified terms, that the Products contain "Zero Sugar." Yet the Products are deliberately formulated with a substantial amount of sugar.

7. Defendant nevertheless seeks to capitalize on consumers' desire for products that contain low amounts of sugar by falsely, misleadingly, and deceptively labeling and advertising the Products with the Zero Sugar Representations. Defendant's Zero Sugar Representations appear prominently on the Products' labels and in Defendant's advertising and marketing materials. Defendant thereby conveys an unqualified message to consumers as a selling point: the Products contain only zero sugar. That message is false or misleading because the Products contain a substantial amount of sugar in the form of allulose.

8. The Zero Sugar Representations are material. The presence or absence of sugar is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase the Products. The absence of sugar in the Products is an important characteristic of the Products and is precisely the characteristic Defendant

prominently features in its marketing, which Defendant would not do if it did not help sell the Products.

9. Defendant knows that consumers place substantial value on products represented as containing no sugar and uses the Zero Sugar Representations to induce consumers to purchase the Products and distinguish the Products in the consumer marketplace.

10. Plaintiffs and Class Members therefore suffered economic injury at the point of purchase. They paid a price premium for Products represented as having "Zero Sugar," but they received Products with sugar.

11. Plaintiffs bring this action individually and in a representative capacity on behalf of similarly situated consumers who purchased the Products during the relevant Class Periods. Plaintiffs seek, on their individual behalf and on behalf of the Classes, actual damages, statutory damages, and all other relief available under applicable law to remedy Defendant's deceptive conduct.

12. As set forth below, Defendant's conduct violates applicable consumer-protection laws, including New York General Business Law §§ 349 and 350 and the District of Columbia's Consumer Protection Procedures Act.

## PARTIES

13. Plaintiff Joseph Nina is, and at all times relevant hereto was, a citizen of the State of New York residing in New York, New York. He purchased multiple flavors of the Products, including BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch Caffeine and BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime, on multiple occasions within the year preceding the filing of this Complaint. He purchased the Products at a Stop & Shop located in New York.

14. Plaintiff Jackson Blanchard is, and at all times relevant hereto was, a citizen of the District of Columbia residing in Washington, District of Columbia. He purchased one bottle of BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime, on or about October 22, 2026, from a CVS located at 1099 Vermont Ave., Washington, D.C., 20005. He also purchased one bottle of BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch Caffeine, on or about October 24, 2026, from a Walgreens located at 801 7th St. NW, Washington, D.C., 20001.

15. Defendant BA Sports Nutrition, LLC is a Delaware limited liability company that maintains its principal place of business in New York, New York. Defendant formulates, labels, markets, distributes, and/or sells the Products throughout the United States, including throughout the State of New York and the District of Columbia. The Products' packaging identifies the Products as "Manufactured for: BA Sports Nutrition, LLC, New York, NY 11357."

**JURISDICTION AND VENUE**

16. The Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the proposed Class includes more than 100 members, the aggregate amount in controversy exceeds five million dollars, exclusive of interest and costs, and at least one member of the proposed Class is a citizen of a state different from Defendant. Plaintiff Blanchard is a citizen of the District of Columbia. The proposed D.C. Class is defined as all persons who purchased the Products in the District of Columbia and accordingly includes citizens of the District of Columbia and of other states. The proposed New York Class is defined as all persons who purchased the Products in New York and accordingly includes citizens of New York and of other states. Defendant is a Delaware limited liability company that maintains its principal place of business in New York. For the purposes of CAFA citizenship, an unincorporated association is

"a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10); *see also Rodriguez v. Festival Fun Parks, LLC*, 763 F. Supp. 3d 336, 347 (E.D.N.Y. 2025) ("The Court adopts the reasoning of the Tenth and Fourth Circuits and finds that Festival, as an LLC, is an unincorporated association under 28 U.S.C. § 1332(d)(10)"). Defendant is therefore a citizen of Delaware and New York and is diverse from at least one member of the proposed Class. Accordingly, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d).

17. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Defendant resides in this District within the meaning of § 1391(c)(2), as Defendant is subject to personal jurisdiction here. Defendant maintains its principal place of business in New York, New York, within this District.

18. The Court has personal jurisdiction over Defendant because Defendant maintains its principal place of business in New York, New York, within this District, and has purposefully conducted substantial business in this District by formulating, labeling, marketing, distributing, and selling the Products here.

## ALLEGATIONS OF FACT

**Defendant Markets, Advertises, and Sells the Products as "Zero Sugar."**

19. Defendant formulates, labels, markets, advertises, distributes, and sells the Products to consumers throughout the United States, including in the State of New York and the District of Columbia. The Products are sold online and through major retailers, including Target, CVS, Walgreens, Amazon, and other retail stores.

20. Defendant markets and sells the Products as food products intended for purchase and consumption by ordinary consumers. Upon information and belief, Defendant controls the

Products' formulation, ingredients, packaging, labeling, advertising, website content, point-of-sale materials, and other representations made to consumers concerning the Products. Defendant therefore possesses, or has access to, information concerning the Products' ingredients and formulation that consumers do not possess.

21. Defendant prominently represents that the Products are "Zero Sugar" and/or makes other substantially similar representations communicating that the Products contain no sugar. These representations are affirmative representations concerning a material characteristic of the Products.

22. The Zero Sugar Representations appear, or have appeared, on the Products' packaging, and in Defendant's other marketing and advertising materials, including Defendant's website, Amazon product listings, and other retailer listings. Defendant thus places the Zero Sugar Representations directly before consumers at the time they encounter, evaluate, and decide whether to purchase the Products.

23. As depicted below, Defendant's Products bear the Zero Sugar Representations on the front label, which states "ZERO" or "ZERO SUGAR" in prominent, bold type:[2]

---

[2] *BODYARMOR Flash IV ZERO Sugar Hydration Drink, Lemon Lime, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0DLCYZ336 (last visited Nov. 6, 2026); *BODYARMOR Flash IV Caffeine + Zero Sugar Drink, Pineapple, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0G4XPTX69 (last visited Nov. 6, 2026); *BODYARMOR Flash IV Caffeine + Zero Sugar Drink, Watermelon, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0G4XLZLGD (last visited Nov. 6, 2026).


BODYARMOR
FLASH I.V.
12 PACK
20 FL OZ
591 ML BOTTLE
FLASH
I.V.
ZERO
LEMON LIME
LIMA LIMÓN
ZERO SUGAR
SIN AZÚCAR
2290MG
ELECTROLYTES
ZINC AND
VITAMINS B+C

*Figure 1*


BODYARMOR
FLASH I.V.
12 PACK
20 FL OZ
591 ML BOTTLE
FLASH
I.V.
CAFFEINE
ZERO SUGAR
PINEAPPLE
PASSIONFRUIT
PIÑA MARACUYÁ
95MG CAFFEINE
2290MG
ELECTROLYTES
ZINC AND
VITAMINS B+C

*Figure 2*




*Figure 3*

24. The Zero Sugar Representations are displayed prominently and are presented to consumers as an objective fact concerning the Products, rather than as an opinion, estimate, or qualified statement.

25. Defendant repeatedly uses the false Zero Sugar Representations to identify, distinguish, brand, advertise, and sell the Products in the marketplace. The representations therefore form an important part of the Products' labeling, branding, advertising, and overall marketing message. The Zero Sugar Representations also serve to distinguish the Products from Defendant's other products, which Defendant acknowledges do contain more than one gram of

sugar. For example, Defendant's BODYARMOR Flash IV Hydration Drink, Grape, discloses 16 grams of sugars per serving.[3]

26. An ordinary consumer encountering an unqualified representation that a product is "Zero Sugar" would reasonably understand that representation according to its ordinary meaning: that the Products contain no sugar.

27. Defendant's decision to place the Zero Sugar Representations prominently on the Products demonstrates that Defendant understood the representations were material and intended them to communicate an important product attribute and to influence consumers' purchasing decisions.

**The Products Contain Allulose.**

28. Contrary to Defendant's Zero Sugar Representations, the Products contain a substantial amount of sugar per serving in the form of allulose. Allulose is the third- or fourth-listed ingredient, depending on flavor, and under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). Thus, allulose is the third or fourth most prominent of the Products' listed ingredients.

29. Allulose is not an incidental contaminant, trace substance, or ingredient that appears in the Products by accident. It is an intentionally selected ingredient in the Products' formulation. Defendant deliberately uses allulose in manufacturing the Products and knowingly places Products containing allulose into the marketplace.

---

[3] *BODYARMOR Flash IV Hydration Drink, Grape, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0C1TBQJZ8 (last visited Nov. 6, 2026).

30. Allulose is a naturally occurring sugar found in small amounts in figs, raisins, wheat, maple syrup, and molasses. Chemically, allulose is a monosaccharide, just like fructose. Allulose and fructose are both sugar carbohydrates.

31. Defendant knows that the Products contain allulose because Defendant formulates, manufactures, packages, markets, and/or sells the Products and controls the Products' ingredient information and labeling.

32. Allulose is an ingredient intentionally included in the Products' formulation and identified in the Products' ingredient lists. For example, allulose is the third-listed ingredient for the BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime: "Filtered Water, Citric Acid, ***Allulose***, Potassium Citrate (Electrolyte), Salt (Electrolyte), Potassium Chloride (Electrolyte), Sodium Citrate (Electrolyte), Sodium Lactate (Electrolyte), Calcium Carbonate (Electrolyte), Stevia Sweetener, Gum Arabic, Magnesium Oxide (Electrolyte), Natural Lemon Lime Flavor with other Natural Flavors, Ester Gum, Ascorbic Acid, Niacinamide (Vitamin B3), Zinc Oxide (Electrolyte), Guar Gum, Pyridoxine Hydrochloride (Vitamin B6), Cyanocobalamin (Vitamin B12)."[4] Similarly, allulose is the fourth-listed ingredient for the BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch: "Filtered Water, Electrolyte Blend, Citric Acid, ***Allulose Syrup***, Fruit and Vegetable Juice [Color], Natural Watermelon Punch Flavor with other Natural Flavors, Steviol Glycosides (Stevia Sweetener), Caffeine (from green coffee beans), Vitamins (Ascorbic Acid [Vitamin C], Niacinamide [Vitamin B3], Pyridoxine Hydrochloride [Vitamin B6], Cyanocobalamin [Vitamin B12]), Gum Arabic, Ester Gum, Guar Gum."[5]

---

[4] *BODYARMOR Flash IV ZERO Sugar Hydration Drink, Lemon Lime, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0DLCYZ336 (last visited Nov. 6, 2026).

[5] *BODYARMOR Flash IV Caffeine + Zero Sugar Drink, Watermelon, 20 Oz (12 Pk)*, AMAZON, https://www.amazon.com/dp/B0G4XLZLGD (last visited Nov. 6, 2026). Components of Electrolyte Blend omitted for brevity.

33. Under federal labeling law, ingredients must be listed in descending order of predominance by weight. 21 C.F.R. § 101.4(a)(1). The fact that allulose is identified as the third or fourth ingredient further demonstrates that allulose is a substantial component of the Products, rather than a de minimis or incidental ingredient.

34. Thus, Defendant's own admissions establish the presence, and knowing and intentional use, of allulose in the Products.

35. The Products therefore contain a substantial quantity of sugar in the form of allulose notwithstanding Defendant's repeated representation that the Products contain only "Zero Sugar."

36. Defendant's marketing creates a direct contradiction. Allulose is sugar; a product sweetened with allulose is by definition a product containing sugar. By prominently telling consumers that the Products contain no sugar while intentionally formulating the Products with substantial quantities of allulose, Defendant deceives the public through misleading packaging statements and labels. This deception has earned Defendant substantial revenue while damaging a broad class of consumers across the State of New York and the District of Columbia.

**Allulose Is a Sugar Under the Applicable Definition.**

37. Federal law establishes specific requirements governing when a manufacturer may represent a product as "sugar free," "zero sugar," or using a substantially similar nutrient-content claim. Under 21 C.F.R. § 101.60(c)(1), a food may not be labeled "sugar free," "zero sugar," or with a substantially similar claim unless it "contains less than 0.5 g of sugars, as defined in § 101.9(c)(6)(ii)," and satisfies the regulation's other requirements.

38. Section 101.9(c)(6)(ii), in turn, expressly defines "Total Sugars" broadly as "the sum of all free mono- and disaccharides (such as glucose, fructose, lactose, and sucrose)."

39. Allulose is a monosaccharide. It therefore falls within the express language of § 101.9(c)(6)(ii), which encompasses "all free mono- and disaccharides."

40. Nothing in the regulatory text of § 101.9(c)(6)(ii) excludes allulose from the definition of "Total Sugars."

41. The FDA's regulatory history confirms this reading. In its 2016 final rule revising the Nutrition Facts label, the FDA specifically considered the treatment of allulose and stated that "[a]llulose, as a monosaccharide, must be included" in the Total Sugars declaration unless and until the agency adopted a different rule.[6]

42. The FDA's 2016 statement is consistent with the text of § 101.9(c)(6)(ii): because allulose is a monosaccharide, it falls within the regulation's definition of "Total Sugars."

43. The FDA subsequently issued guidance concerning allulose in October 2020. That guidance did not amend § 101.9(c)(6)(ii), did not promulgate a new definition of "Total Sugars," and did not formally exclude allulose from the regulatory definition of sugar.[7]

44. Instead, the 2020 guidance announced an exercise of enforcement discretion concerning the declaration of allulose on Nutrition Facts and Supplement Facts labels, pending further consideration through rulemaking. The guidance addressed the FDA's enforcement position concerning how allulose should be treated for purposes of specified nutrition-panel declarations; it did not amend the underlying regulation or establish a new definition of sugar.

45. Nothing in the 2020 guidance authorizes a manufacturer to disregard the separate regulatory requirements governing nutrient-content claims such as "zero sugar."

---

[6] *Food Labeling: Revision of the Nutrition and Supplement Facts Labels*, 81 Fed. Reg. 33,742, 33,795-96 (May 27, 2016).

[7] U.S. Food & Drug Admin., *The Declaration of Allulose and Calories from Allulose on Nutrition and Supplement Facts Labels: Guidance for Industry* 1 (Oct. 2020).

46. The FDA's decision not to enforce provisions of law does not amend the text of the law or absolve actors of their violations of law. The 2020 guidance therefore did not transform the regulatory definition of "Total Sugars" into a definition that excludes allulose.

47. Nor does the FDA's exercise of enforcement discretion establish that a manufacturer may affirmatively, and falsely, represent that a product contains "Zero Sugar" while the product contains a substantial amount of monosaccharide encompassed by the regulation's definition of "Total Sugars."

48. The FDA itself has since rejected any reading of its 2020 guidance as narrowing the regulatory definition. In *Franco v. Chobani, LLC*, the FDA filed an amicus brief taking the position that "the text of § 101.9(c)(6)(ii) is unambiguous, and that total sugars as defined in that regulation include all monosaccharides, including allulose."[8] The Seventh Circuit agreed, holding that "[t]he federal requirements at issue are plain—food products cannot be labeled sugar free unless they have less than half a gram of sugar, and sugars include every monosaccharide, including allulose."[9]

49. Applicable state laws and regulations likewise incorporate and impose an identical or materially similar requirement governing the use of express nutrient content claims and the definition of sugar. New York Comp. Codes R. & Regs. tit. 1, § 259.1 incorporates applicable federal food labeling requirements, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii). Likewise, District of Columbia Municipal Regulation 25-A, § 1102 incorporates applicable federal food labeling requirements, including 21 C.F.R. Part 101, which encompasses §§ 101.60(c)(1) and 101.9(c)(6)(ii).

---

[8] *Franco v. Chobani, LLC*, 184 F.4th 599, 604 (7th Cir. 2026).
[9] *Id.* at 606.

**The Zero Sugar Representations Are False and Misleading.**

50. Defendant represents the Products contain "Zero Sugar," but the Products contain a substantial amount of allulose per serving.

51. Because allulose is a monosaccharide that falls within the applicable definition of sugar and is the third- or fourth-listed ingredient, upon information and belief, the Products' sugar content equals or exceeds the 0.5-gram threshold above which "Zero Sugar" nutrient-content claims may not lawfully be made. Thus, the Products cannot bear the "Zero Sugar" representations under § 101.60(c)(1).

52. Accordingly, Defendant's Products do not satisfy the federal regulatory standard governing the use of the Zero Sugar Representations, nor do they satisfy the identical state regulatory standards.

53. Defendant nevertheless prominently represents to consumers that the Products contain "Zero Sugar."

54. Defendant's representations that the Products contain "Zero Sugar" are objectively false.

55. The representations are also independently misleading to reasonable consumers because an unqualified "Zero Sugar" representation communicates that the product contains no sugar, while Defendant's Products contain a substantial quantity of sugar in the form of allulose.

56. The deception is particularly material because Defendant does not qualify its representations by stating that the Products are free of only certain types of sugar. To the contrary, Defendant affirmatively tells consumers that the Products contain "Zero Sugar."

57. The prominence and repetition of the Zero Sugar Representations reinforce their significance. Defendant places the Zero Sugar Representations on the Products' packaging and

uses them throughout Internet and retail product listings, thereby presenting the absence of sugar as an important attribute and selling point of the Products.

**Defendant Knew the Products Contain Substantial Amounts of Allulose.**

58. Defendant knew that the Products contained substantial amounts of allulose before placing the Products on the market.

59. Defendant knew the amount of allulose contained in each serving of the Products.

60. Defendant necessarily possessed this information because Defendant controls the Products' formulation, ingredient specifications, manufacturing, packaging, labeling, and marketing.

61. Defendant also knew that consumers would encounter and consider the Zero Sugar Representations when deciding whether to purchase the Products. The product packaging and advertisements highlight the "Zero Sugar" nature of the Products.

62. Upon information and belief, Defendant selected and used the Zero Sugar Representations as part of a deliberate marketing strategy designed to distinguish the Products from other products, including its own BODYARMOR drink products containing conventional sugar, and to appeal to consumers willing to pay a premium for products with less sugar.

63. Defendant's repeated use of the Zero Sugar Representations on the Products' packaging and in its advertising was not the result of an isolated printing error, inadvertent omission, or one-time mistake. Rather, Defendant incorporated the representations into the Products' branding and marketing and sold the Products to customers while using those representations.

64. Upon information and belief, Defendant was aware that allulose is a sugar but nevertheless made a false nutrient-content claim that the Products contained "Zero Sugar."

65. Defendant's use of the representations despite its knowledge of the Products' formulation further demonstrates that the representations were an intentional and material component of Defendant's marketing and sale of the Products.

66. Upon information and belief, Defendant continues to market and sell the Products using the Zero Sugar Representations.

67. Defendant's conduct was undertaken in the course of its business and in connection with the marketing, advertising, distribution, and sale of the Products to consumers.

68. Defendant had the ability to accurately describe the Products or to simply make no nutrient-content claim concerning sugar at all. Instead, Defendant affirmatively chose to market and sell the Products using the Zero Sugar Representations, thereby inducing consumers seeking products without sugar to purchase the Products.

**Plaintiffs and Consumers Were Injured by Defendant's Misrepresentations.**

69. Plaintiff Joseph Nina purchased multiple flavors of the Products, including BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch Caffeine and BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime, on multiple occasions within the year preceding the filing of this Complaint. He purchased the Products at a Stop & Shop located in New York. He purchased the Products for personal, family, or household use, and not for resale.

70. Plaintiff Jackson Blanchard purchased one bottle of BODYARMOR Flash IV Zero Sugar Hydration Drink, Lemon Lime, on or about October 22, 2026, from a CVS located at 1099 Vermont Ave., Washington, D.C., 20005. He also purchased one bottle of BODYARMOR Flash IV Zero Sugar Hydration Drink, Watermelon Punch Caffeine, on or about October 24, 2026, from a Walgreens located at 801 7th St. NW, Washington, D.C., 20001. He purchased the Products for personal, family, or household use, and not for resale.

71. Before purchasing the Products, Plaintiffs encountered Defendant's Zero Sugar Representations on the Products' front label.

72. The Zero Sugar Representations are material. The presence or absence of sugar that a food contains is a characteristic that a reasonable consumer, acting reasonably under the circumstances, would consider important in deciding whether to purchase it. Defendant's own conduct confirms materiality: Defendant placed the representation on the front of every package and featured it prominently in its advertising.

73. Had Defendant accurately represented that the Products contained sugar, Plaintiffs would not have purchased the Products or would have purchased them only for substantially less money. The Products were worth less to Plaintiffs than they would have been had they actually conformed to Defendant's representations that the Products contain "zero sugar."

74. Plaintiffs therefore suffered economic injury at the point of purchase.

75. Plaintiffs did not receive the benefit of the bargain for which they paid. Instead, Plaintiffs received Products that contained a substantial amount of sugar despite Defendant's representations that the Products contained "zero sugar."

76. Plaintiffs' injuries were caused by Defendant's misrepresentations. The challenged representations concern an important characteristic of the Products that Defendant affirmatively placed before consumers as a reason to purchase them.

77. The same deception affected other consumers who purchased the Products after encountering the Zero Sugar Representations. Those consumers were exposed to the same materially misleading representations, purchased Products containing a substantial amount of sugar, and received Products that did not conform to Defendant's representations.

78. The challenged conduct is therefore consumer-oriented and arises from Defendant's common marketing, labeling, advertising, and sale of the Products to the public.

79. Defendant's conduct constitutes deceptive, misleading, unfair, and/or unlawful conduct under the consumer-protection laws applicable to Plaintiffs' purchases and claims, including New York General Business Law §§ 349 and 350 and the District of Columbia's Consumer Protection Procedures Act.

80. Defendant made representations concerning the Products that were objectively false and/or misleading to reasonable consumers.

81. Defendant's representations were material because they concerned the Products' sugar content, which is a material characteristic of the Products.

82. Defendant's conduct caused Plaintiffs to suffer ascertainable economic injury in the form of a price premium. Plaintiffs paid more for the Products than the Products were worth, and more than they would have paid, because Defendant's deceptive representations inflated the price of the Products.

83. As a direct and proximate result of Defendant's deceptive, misleading, unfair, and unlawful conduct described above, Plaintiffs and members of the proposed Classes were injured in fact and suffered ascertainable economic losses when they paid a premium for products bearing Defendant's false or misleading Zero Sugar Representations. The foregoing allegations establish Plaintiffs' and the proposed Class members' claims arising from Defendant's common course of conduct, which forms the basis for the class allegations set forth below.

## CLASS ACTION ALLEGATIONS

84. Plaintiffs bring this case as a class action pursuant to Fed. R. Civ. P. 23 on their own behalf and on behalf of all others similarly situated. The proposed Classes are defined as follows:

> **New York Class:** All persons who, during the maximum period of time permitted by law ("Class Period"), purchased the Products in the State of New York for personal, family, or household use, and not for resale.

> **D.C. Class:** All persons who, during the maximum period of time permitted by law ("Class Period"), purchased the Products in the District of Columbia for personal, family, or household use, and not for resale.

85. The Classes do not include: (i) Defendant, its assigns, successors, and legal representatives; (ii) any entities in which Defendant has controlling interests; (iii) federal, state, and/or local governments, including, but not limited to, their departments, agencies, divisions, bureaus, boards, sections, groups, councils, and/or subdivisions; (iv) any judicial officer presiding over this matter and persons within the third degree of consanguinity to such judicial officer; and (v) Plaintiffs' counsel and Defendant's counsel.

86. Plaintiffs reserve the right to amend or otherwise alter the class definition presented to the Court at the appropriate time in response to facts learned through discovery, legal arguments advanced by Defendant, or otherwise.

87. Members of the Classes are so numerous that joinder of all members is impracticable. Upon information and belief, the Classes consist of thousands of purchasers. Accordingly, it would be impracticable to join all members of the Class before the Court.

88. There are numerous questions of law or fact common to all members of the putative Class. Included within the common questions of law or fact are:

a. Whether the Products contain allulose and, if so, the amount of allulose contained in the Products;

b. Whether allulose is a sugar under the applicable laws, regulations, and standards governing the Zero Sugar Representations;

c. Whether Defendant represented that the Products contained "Zero Sugar" or substantially similar nutrient-content claims;

d. Whether these representations were false, deceptive, misleading, or otherwise unlawful under the laws asserted herein;

e. Whether Defendant's labeling, packaging, advertising, marketing, and sale of the Products constituted consumer-oriented conduct and/or advertising directed to consumers;

f. Whether Defendant knew that the Products contained allulose and that the Products did not conform to the Zero Sugar Representations;

g. Whether the Zero Sugar Representations were material and likely to mislead a reasonable consumer acting reasonably under the circumstances;

h. Whether Defendant's conduct violated New York General Business Law §§ 349 and 350 and/or the District of Columbia's Consumer Protection Procedures Act;

i. Whether Defendant's conduct caused economic injury to purchasers of the Products and the appropriate method for measuring such injury; and

j. Whether Plaintiffs and Class Members are entitled to actual damages or statutory damages and, if so, in what amount.

89. Plaintiffs' claims are typical of the claims of the Class members they seek to represent. Plaintiffs, like the Class members, purchased Defendant's Products labeled with

Defendant's deceptive Zero Sugar Representations. Plaintiffs purchased the Products during the applicable Class Period and were exposed to the same challenged Zero Sugar Representations. Plaintiffs suffered the same type of economic loss as the other Class members. Plaintiffs' and the Class members' claims are based on the same legal theories and arise from the same course of conduct by Defendant.

90. Plaintiffs are adequate representatives because they have no interests adverse to those of the Class, are committed to the vigorous prosecution of this action, and have retained skilled and experienced counsel. Plaintiffs will fairly and adequately represent and protect the interests of the Class as required by Fed. R. Civ. P. 23(a)(4).

91. A class action is superior to all other available methods for the fair and efficient adjudication of the claims asserted in this action. Common questions of law and fact predominate over any questions affecting only individual Class members, and a class action is superior because the common issues can be resolved through common evidence and a single adjudication. Individual joinder of all Class members is impracticable, and no other available method of adjudication would provide a more efficient or consistent means of resolving the claims asserted herein. The prerequisites to maintaining this action pursuant to Federal Rule of Civil Procedure 23(b)(3) are satisfied for at least the following reasons:

a. The central issues in this action, including whether the Products contain allulose, whether allulose constitutes sugar under the applicable laws and regulations, what Defendant represented concerning the Products' sugar content, whether those representations were false or misleading, whether Defendant knew the Products did not conform to those representations, and whether Defendant's conduct violated the

applicable consumer-protection statutes, are common to the Classes and predominate over any individual questions;

b. The Zero Sugar Representations were disseminated to consumers through common labeling, packaging, advertising, and marketing materials, such that the principal evidence concerning Defendant's conduct, the content of the representations, and their alleged falsity or misleading nature will be common to the Classes;

c. To the extent individual issues exist concerning the circumstances of particular purchases, such issues do not predominate over the common questions because liability will principally turn on Defendant's uniform conduct, the Products' characteristics, Defendant's representations, and the applicable law;

d. The economic injury alleged by Plaintiffs and the Classes arises from the same alleged misconduct and can be established through common evidence and a common methodology. Individual differences, if any, in the amount paid, purchase date, quantity purchased, or resulting monetary recovery do not defeat predominance where the existence and methodology of the alleged injury can be established through common proof;

e. Given the relatively modest value of individual Class members' claims compared with the cost and burden of individual litigation, many Class members would have little incentive or ability to pursue their claims individually. A class action therefore provides an effective mechanism for Class members to obtain relief for alleged injuries that might otherwise go unremedied;

f. Class members have no substantial interest in individually controlling the prosecution of separate actions because the claims arise from Defendant's common course of conduct and present substantially overlapping factual and legal issues;

g. Concentrating the claims in a single proceeding is desirable because the alleged misconduct involves common Products, common representations, common labeling and marketing practices, and common questions concerning Defendant's conduct. A single proceeding will promote consistent adjudication of those issues and avoid unnecessary duplication of discovery, motion practice, expert testimony, and trial proceedings;

h. Individual litigation would create a substantial risk of inconsistent or varying adjudications concerning the same Products, Representations, and underlying conduct. Class-wide adjudication will promote consistency and judicial economy;

i. There are no pending individual actions known to Plaintiffs that would make separate adjudication a preferable method of resolving the controversy, and concentrating the claims in this forum is desirable and efficient; and

j. This action is manageable as a class action because the central liability issues are capable of resolution through common evidence and because any individualized issues concerning damages or other forms of relief can be addressed through appropriate class-wide methodologies, claim procedures, or other case-management mechanisms ordered by the Court.

**COUNT ONE**
**Violation of New York General Business Law § 349**
**N.Y. Gen. Bus. Law § 349**
**By Plaintiff Joseph Nina**
**(Individually, and on Behalf of the New York Class)**

92. Plaintiff Nina restates and realleges the preceding allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

93. This cause of action is brought pursuant to New York General Business Law § 349 ("§ 349"), on behalf of Plaintiff Nina and the New York Class, who purchased the Products in the State of New York within the applicable limitations period.

94. New York General Business Law § 349(a) declares unlawful "[u]nfair, deceptive, or abusive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state." Section 349(h) provides that "any person who has been injured by reason of any deceptive act or practice made unlawful by this section may bring an action." To state a claim under § 349, a plaintiff must allege consumer-oriented conduct, a materially misleading act or practice that is likely to mislead a reasonable consumer under the circumstances, and an injury caused by the deceptive act.

95. Defendant's labeling, advertising, marketing, packaging, distribution, and sale of the Products constitute consumer-oriented conduct within the meaning of § 349. Defendant disseminated the Zero Sugar Representations to consumers throughout New York, including through the Products' packaging, website, and third-party retailer listings. The challenged conduct was directed at consumers generally and had a broad impact on the consuming public.

96. Defendant engaged in materially deceptive acts and practices by representing that the Products contain no sugar, when the Products do not conform to that representation. As alleged herein, the Products contain a substantial amount of allulose.

97. Each of Defendant's Zero Sugar Representations constitutes an unfair or deceptive act or practice within the meaning of New York General Business Law § 349(a) because each states that the Products contain "zero sugar" when, in fact, the Products contain a substantial amount of allulose. Allulose is a sugar. By making the Zero Sugar Representations, Defendant misrepresented that the Products possessed characteristics, ingredients, quantities, and qualities that they did not have and that they were of a particular standard or quality when they were of another.

98. Allulose is a monosaccharide and therefore a sugar under 21 C.F.R. § 101.9(c)(6)(ii). Allulose is the third- or fourth-listed ingredient in the Products, depending on flavor, and the Products contain a substantial amount of allulose per serving. The Products therefore did not possess the represented "Zero Sugar" characteristic or quality.

99. The Zero Sugar Representations were materially misleading because they were likely to mislead a reasonable consumer acting reasonably under the circumstances. A reasonable consumer would understand a representation stating "Zero Sugar" to mean that the product contained no sugar. The Zero Sugar Representations were material because sugar content is the very characteristic by which Defendant distinguishes the Products from its other sports drink products containing conventional sugar.

100. Defendant knew that the Products contained allulose and nevertheless marketed and sold the Products using representations that they contained "Zero Sugar." Defendant's conduct was not isolated or incidental, but instead was part of a broader marketing and labeling practice directed at consumers throughout New York and elsewhere.

101. Before making his purchase, Plaintiff Nina was presented with the Zero Sugar Representations displayed on the Products' packaging.

102. Had Defendant accurately represented that the Product contained sugar, Plaintiff Nina would have paid substantially less for it or would not have purchased it at all.

103. As a result of Defendant's deceptive acts and practices, Plaintiff Nina and members of the New York Class suffered actual injury. They paid for Products represented to contain no sugar when the Products actually contain a substantial amount of sugar.

104. Defendant's unlawful trade practices caused Plaintiff Nina and the New York Class to suffer ascertainable losses. Had Defendant accurately labeled the Products, Plaintiff Nina and members of the New York Class would have paid less for the Products or would not have purchased them.

105. The ascertainable loss of the New York Class is a premium-price loss. Defendant's Zero Sugar Representations inflated the market price of the Products, and Plaintiff Nina and members of the New York Class paid more for the Products than they otherwise would have paid.

106. Defendant's violations of § 349 were willful and knowing within the meaning of § 349. Defendant formulates, manufactures, packages, and markets the Products. Defendant knew that the Products contain allulose yet continued to represent that the Products contained "Zero Sugar." Additionally, the FDA stated in its 2016 rulemaking that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration. 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016). That published statement put Defendant on notice (to the extent that it was not already on notice) that allulose constitutes sugar under the applicable regulatory definition.

107. Pursuant to New York General Business Law § 349(h), Plaintiff Nina and the New York Class seek actual damages or fifty dollars ($50) per purchase for each class member, whichever is greater, and, to the extent the Court finds that Defendant willfully or knowingly violated § 349, an increase in damages to an amount not exceeding three times the actual damages,

up to one thousand dollars ($1,000) per class member. Plaintiff and the Class also seek reasonable attorneys' fees and such injunctive and other relief as the Court deems appropriate.

## COUNT TWO

**Violation of New York General Business Law § 350**
**N.Y. Gen. Bus. Law §§ 350, 350-a, and 350-e**
**By Plaintiff Nina**
**(Individually and on Behalf of the New York Class)**

108. Plaintiff Nina restates and realleges the preceding allegations set forth in paragraphs 1 through 91 as though fully set forth herein.

109. This cause of action is brought pursuant to New York General Business Law § 350 ("§ 350"), on behalf of Plaintiff Nina and the New York Class.

110. New York General Business Law § 350 declares unlawful "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations." N.Y. Gen. Bus. Law § 350-a(1).

111. Defendant's packaging, product names, website content, and retailer listings for the Products constitute advertising, including labeling, of a commodity within the meaning of §§ 350 and 350-a. Defendant disseminated that advertising to consumers in New York through the Products' packaging and labeling and through Defendant's and third-party retailers' websites and other marketing channels.

112. Defendant's labeling and advertising were materially misleading because Defendant represented that the Products contained "Zero Sugar" while the Products contain a substantial amount of sugar in the form of allulose. A reasonable consumer would understand a

representation stating "Zero Sugar" to mean that the product contained no sugar. As alleged herein, allulose is a sugar, and the Products therefore do not conform to Defendant's representations.

113. The Zero Sugar Representations were material because the quantity of sugar that a food contains is a material characteristic of the Products and was likely to affect a reasonable consumer's purchasing decision. Additionally, sugar content is the very characteristic by which Defendant distinguishes the Products from its sports drink products containing conventional sugar. Defendant's advertising therefore had the capacity, tendency, or likelihood to mislead consumers acting reasonably under the circumstances.

114. Defendant knew that the Products did not conform to the Zero Sugar Representations. Defendant nevertheless continued to label, advertise, market, distribute, and sell the Products using those representations.

115. As a direct and proximate result of Defendant's false advertising, Plaintiff Nina and members of the New York Class suffered actual economic injury and lost money or property. They paid for Products represented as containing zero sugar, and received Products that do not conform to that representation. Accordingly, Plaintiff Nina and members of the New York Class were deprived of the benefit of their bargain and paid more for the Products than they otherwise would have paid.

116. Defendant's violations were willful and knowing. Defendant knew that the Products contained allulose while continuing to advertise and label the Products as containing "Zero Sugar." Additionally, the FDA stated in its 2016 rulemaking that allulose, "as a monosaccharide, must be included" in the Total Sugars declaration. 81 Fed. Reg. 33,742, 33,795–96 (May 27, 2016). That published statement put Defendant on notice (to the extent that it was not already on notice) that allulose constitutes sugar under the applicable regulatory definition.

117. Pursuant to New York General Business Law § 350-e(3), Plaintiff Nina and the New York Class seek actual damages or five hundred dollars ($500) per purchase for each class member, whichever is greater. To the extent the Court finds that Defendant willfully or knowingly violated §§ 350 or 350-a, Plaintiff and the New York Class further seek an increase in damages to an amount not exceeding three times the actual damages, up to ten thousand dollars ($10,000) per class member. Plaintiff Nina and the New York Class also seek reasonable attorneys' fees and such other relief as the Court deems appropriate.

## <u>COUNT THREE</u>
**Violation of the District of Columbia Consumer Protection Procedures Act**
**D.C. Code § 28-3901 *et seq.***
**By Plaintiff Jackson Blanchard**
**(Individually, and on Behalf of the D.C. Class)**

118. Plaintiff Blanchard restates and realleges the preceding allegations set forth in paragraphs 1 through 92 as though fully set forth herein.

119. This cause of action is brought pursuant to the District of Columbia Consumer Protection Procedures Act, D.C. Code § 28-3901 *et seq*., on behalf of Plaintiff Blanchard and the D.C. Class, who purchased the Products in the District of Columbia within the applicable limitations period.

120. D.C. Code § 28-3904 declares it a violation of the Consumer Protection Procedures Act to engage in any unfair or deceptive trade practice, whether or not any consumer is in fact misled, deceived, or damaged.

121. Under D.C. Code § 28-3904(a), it is an unfair or deceptive trade practice to represent that goods "have . . . characteristics, ingredients, uses, benefits, or quantities that they do not have." It is also an unfair or deceptive trade practice to represent that goods "are of particular standard, quality, [or] grade . . . if in fact they are of another[.]" D.C. Code § 28-3904(d). It is also

an unfair or deceptive trade practice to "misrepresent as to a material fact which has a tendency to mislead[.]" D.C. Code § 28-3904(e).

122. Each of Defendant's Zero Sugar Representations is a representation within the meaning of all of the above subsections because each states that the Products contain "Zero Sugar" when, in fact, the Products contain allulose. Allulose is a sugar. By making that representation, Defendant misrepresented that the Products possessed characteristics, ingredients, quantities, and qualities that they did not have and that they were of a particular standard or quality when they were of another. Additionally, the Zero Sugar Representations are misrepresentations as to a material fact (the sugar content of the Products) that have a tendency to mislead consumers, because a reasonable consumer would understand "Zero Sugar" to mean that the Products contain no sugar of any kind.

123. Plaintiff Blanchard and each member of the D.C. Class purchased the Products for personal, family, or household purposes and not for resale. Each purchase was a consumer transaction within the definitions of the District of Columbia Consumer Protection Procedures Act.

124. Allulose is a monosaccharide and therefore a sugar under 21 C.F.R. § 101.9(c)(6)(ii). Allulose is the third or fourth-listed ingredient in the Products, depending on flavor, and the Products contain a substantial amount of allulose per serving. The Products therefore did not possess the represented "Zero Sugar" characteristic or quality.

125. The Zero Sugar Representations were material and had a tendency to mislead consumers acting reasonably under the circumstances. An ordinary consumer would understand "Zero Sugar" to mean that the Products contained no sugar.

126. Before making each of his purchases, Plaintiff Blanchard was presented with the Zero Sugar Representations displayed on the Products' packaging.

127. Plaintiff Blanchard and the D.C. Class paid a price premium for Products represented as containing no sugar. Had Defendant accurately labeled the Products, Plaintiff Blanchard and members of the D.C. Class would have paid less for the Products or would not have purchased them.

128. Pursuant to D.C. Code § 28-3905(k)(2)(A), Plaintiff Blanchard and the D.C. Class seek treble damages or statutory damages of $1,500, whichever is greater, for Defendant's violations, recoverable on a classwide basis. Plaintiff Blanchard and the D.C. Class also seek punitive damages pursuant to D.C. Code § 28-3905(k)(2)(C), recoverable on a classwide basis. Plaintiff Blanchard and the D.C. Class also seek reasonable attorneys' fees and costs to the extent authorized by applicable law, and such other relief as the Court deems appropriate.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that the Court enter judgment in their favor and against Defendant and grant the following relief:

a) For an order certifying the proposed Classes pursuant to Fed. R. Civ. P. 23, appointing Joseph Nina and Jackson Blanchard as Class Representatives, and appointing Plaintiffs' counsel as Class Counsel for each of the Classes, as appropriate;

b) For actual, statutory, and/or other monetary relief available under the asserted causes of action, including damages under New York General Business Law §§ 349(h) and 350-e(3) and under the District of Columbia Consumer Protection Procedures Act, in amounts to be determined at trial or otherwise permitted by applicable law;

c) For pre-judgment and post-judgment interest on all amounts awarded, to the extent permitted by applicable law;

d) For an order awarding Plaintiffs and the Class members reasonable attorneys' fees and costs to the extent authorized by applicable law; and

e) For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs hereby demand a trial by jury on all issues and causes of action so triable.

Dated: November 16, 2026

Respectfully submitted,

*/s/ Samuel R. Jackson*

Samuel R. Jackson (SBN 5332325)
CARNEY BATES & PULLIAM, PLLC
One Allied Drive, Suite 1400
Little Rock, AR 72202
Telephone: (501) 312-8500
Facsimile: (501) 312-8505
Email: sjackson@cbplaw.com

*Attorneys for Plaintiffs and the Proposed Classes*